ON OBJECTIONS TO THE MAGISTRATE'S DECISION IN MANDAMUS DECISION
Relator, P.C.C. Airfoils, Inc., commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its award of permanent total disability compensation to respondent, Carlotta S. Binkley, and to enter an order denying permanent total disability compensation.
Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate found that the reports of Drs. Lowell C. Meckler and Paul D. Mumma constituted sufficient evidence upon which the commission could rely to support its award of permanent total disability, and that the commission did not abuse its discretion when it failed to explain in its December 13, 2000 order why it rejected its previous reliance upon Dr. Kiva Shtull's report. The magistrate concluded that the Staff Hearing Officer could rely upon Drs. Meckler's and Mumma's reports to award permanent total disability because the reports detailed claimant's dysfunctional right upper extremity an allowed condition and the associated pain.
Additionally, the magistrate found that, after the first order in this matter was vacated, the Staff Hearing Officer could reweigh the evidence and come to a different conclusion, as long as some evidence supported that conclusion. Because the Staff Hearing Officer was only required to identify the evidence he relied upon in rendering his determination, the Staffing Hearing Officer did not have to explain why he rejected Dr. Shtull's report. Accordingly, the magistrate determined the requested writ should be denied.
Relator has filed objections to the magistrate's decision, rearguing those matters addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, the objections are overruled.
Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law to them. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled;
Writ of mandamus denied.
BOWMAN and BRYANT, JJ., concur.
 APPENDIX IN MANDAMUS
In this original action, relator, P.C.C. Airfoils, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of permanent total disability ("PTD") compensation to respondent Carlotta S. Binkley and to enter an order denying PTD compensation.
Findings of Fact:
1. On November 30, 1988, Carlotta S. Binkley ("claimant") sustained an industrial injury while employed as a "finisher" for relator, a self-insured employer under Ohio Workers' Compensation laws. As a finisher, claimant used a pneumatic gun to remove excess metal from parts. She also cleaned parts with dry-cleaning solutions.
2. The industrial claim is allowed for: "Tendonitis right wrist and forearm, gastritis, DeQuervain's disease right hand, trigger thumb right hand, reflex sympathetic dystrophy right upper extremity; major depression and pain disorder." The industrial claim is assigned claim No. L19708-22.
3. On July 27, 1998, claimant filed an application for PTD compensation. In support of her application, claimant submitted a report dated July 3, 1998, from her treating physician, Paul D. Mumma, D.O. Dr. Mumma's report states:
 It is my opinion that Ms. Binkley is completely and totally disabled as a consequence of her severe reflex sympathetic dystrophy of her right upper extremity. This began as a tendonitis, which was untreated as a consequence of delays by the Bureau of Workers' Compensation. By the time that Ms. Binkley had received her tardy and inadequate treatment, she had developed reflex sympathetic changes, which have become permanent? Ms. Binkley's diagnosis has been recognized by at least three independent specialists in rheumatology and chronic pain as well as anesthesiology. She has benefited partially from chemical cervical sympathectomy, but always remits to her baseline of chronic severe pain. She has had problems with gastritis and one episode of GI bleeding as a consequence of her non-steroidal anti-inflammatory drug use and requires medication chronically. She will probably require physician's visits on approximately monthly basis to update and manage medications.
 I believe that Ms. Binkley is permanently and totally disabled from engaging in substantial gainful work activity on a regular and a sustained basis due to the injuries for which her claim has been approved by the Bureau of Workers' Compensation.
4. On October 7, 1998, claimant was examined, at relator's request, by Kiva Shtull, M.D. Dr. Shtull examined only for the physical conditions of the industrial claim. Dr. Shtull's report dated October 8, 1998, states:
 The claimant is not capable of returning to the position of employment which she held on the date of injury; however, she is capable of sustained remunerative employment with restrictions. Generally, she should be restricted to the sedentary work category with further restrictions that there should be no lifting, carrying, pulling, pushing or manipulating any bulky object or any object in excess of one pound when using the right upper extremity. There should be no repetitive or fast paced motion of the right upper extremity. She should not be exposed to extremes of temperature and should not be exposed to laboratory forces to the right upper extremity. There should be no climbing of ladders or scaffolds. Essentially, she is restricted to light clerical work involving primarily the left upper extremity.
5. On October 15, 1998, claimant was examined on behalf of the commission by Lowell C. Meckler, M.D. Dr. Meckler reported:
 CLAIM ALLOWANCES: DeQuervains disease, right hand; reflex sympathetic dystrophy right upper extremity.
* * *
 CHIEF COMPLAINT: The claimant complained of continuous pain in the right hand, arm, shoulder, radiating to the right side of the neck. The claimant stated that this pain has been present for the past ten years and does not allow her full use of her right upper extremity. Mrs. Binkley stated that she does have stomach pain occasionally on taking medication or eating spicy food.
 HISTORY OF PRESENT ILLNESS: The claimant stated that she was employed by PCC Airfoils Inc. for 2 years. She was using an air gun and changing the bit when her right arm struck a metal table. Immediately after her right arm hit the metal table, it began to swell with a lot of pain. The claimant went to see the plant doctor and was sent to the emergency room for an x-ray of the right arm. No fracture was noted.
 The patient returned to work on light duty after two weeks. Three weeks later, the claimant stated that she returned to heavy duty. While using the air gun the claimant stated that she started experiencing swelling and numbness in the tips of her fingers, along with her right elbow swelling. Mrs. Binkley stated that she was unable to use her right arm and hand for any repetitive or strenuous activities. Over the past ten years, she has taken Motrin 500mg as needed for pain, which lead (sic) to "stomach problems." The claimant stated she had a bleeding ulcer approximately one year after the accident from taking steroids and Motrin for pain. The claimant stated that Prevacid does help with her stomach problems.
 The claimant stated that she has had numerous injections which have not been successful to alleviate her right arm and hand pain. She also stated she has been seen at the Cleveland Clinic, and despite an extensive evaluation, no medical benefit was obtained. She has had numerous courses of physical therapy as well as a stellate ganglion block, which failed to relieve symptomatology.
* * *
 PHYSICAL EXAMINATION: * * * Examination of this claimant is limited mainly to the right hand and right upper extremity.
 Examination of the right shoulder elicited diffuse pain on palpation and range of motion testing. Anterior elevation is 90 degrees, posterior elevation was only 30 degrees. Abduction to 90 degrees and adduction was 30 degrees. Internal rotation was 50 degrees and external rotation was 40 degrees.
 Examination of the right upper arm and right elbow again demonstrated diffuse pain with palpation. No deformities were noted. No loss of range of motion could be ascertained.
 Examination of the right forearm, wrist and hand demonstrated discoloration of the forearm and hand, with a trace of swelling in the distal forearm. There was moderately severe pain on palpation of the distal forearm and wrist. Chronic skin changes were noted. The claimant was unable to grasp with her right hand. It was estimated that she retained about ten percent range of motion in this area.
 Examination of the right hand demonstrated diffuse pain on palpation and involved all five digits. Some swelling was present and chronic skin changes were also noted. All five digits showed marked decrease in range of motion, including flexion and extension.
* * *
 DISCUSSION: The claimant suffered an injury to her right upper extremity on November 30, 1988. Her physical exam shows marked changes which are consistent with the diagnosis of reflex sympathetic dystrophy. These findings fit the term, major causagia, include the four cardinal signs of symptoms of RSD, namely: pain, swelling, stiffness, and discoloration. Also, a previous stellate ganglion block was unsuccessful as were several attempts of Bier blocks.
 According to the AMA Guides to the Evaluation of Permanent Impairment, fourth edition the following deficits are noted: The sensory deficit to include the area from the elbow distally as well as the shoulder unit and upper arm was considered to be a 48% impairment of the right upper extremity. Additional partial-permanent impairment is then calculated on loss of range of motion. These values are noted in the physical examination which totals approximately a 90% impairment of the hand and upper extremity. The combined values table then indicates that total impairment is that of 93% of the right hand, wrist, and shoulder.
 OPINION: 1) The claimant has reached maximum medical improvement. 2) The percentage of permanent impairment arising from each of the allowed conditions, amounts to partial permanent impairment of the whole person at 56%. 3) See attached Occupational Activity Assessment form. 4) The claimant can not perform any of her former positions of employment. 5) The claimant can not perform any sustained remunerative work activity. Based on the table on page twenty in the AMA Guides the 93% total impairment of the right hand, wrist and shoulder equals partial permanent impairment of 56% of the whole person.
6. Dr. Meckler completed an Occupational Activity Assessment form dated October 15, 1998. The form asks the examining doctor to indicate by checkmark the claimant's capabilities in several occupational activities throughout the day. On the form, Dr. Meckler indicated that claimant's ability to sit was unrestricted. However, her ability to stand is "0-3 HRS" and her ability to walk is "0-3 HRS." Her ability to lift or carry up to ten pounds is "not at all." Her ability to push, pull or otherwise move is "not at all."
According to Dr. Meckler's report, claimant can use foot controls "occasionally" which means up to one-third of the time. She cannot crouch, stoop, bend or kneel at all. She cannot handle (seize, hold, grasp, turn) at all. She cannot reach at all.
The form asks the examining doctor to indicate whether the handling and reaching restrictions are for "RUE, LUE or both" by circling one. Dr. Meckler failed to circle with respect to handling and reaching restrictions.
7. Following a January 20, 1999 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The January 20, 1999 SHO's order reviews the medical evidence of record including the October 8, 1998 report from Dr. Shtull. The order also reviews the vocational reports of record. The order concludes:
 The claimant's physical condition is such that she is precluded from doing anything with her right upper extremity except using it as a guide. The Staff Hearing Officer finds that considering the claimant's age, education, and work background as already discussed, the claimant could obtain or be retrained for entry level sedentary work within her restrictions. The Staff Hearing Officer takes judicial notice also of the fact that there are many "one-handed" employees in the general workforce.
8. Thereafter, claimant filed in this court a mandamus action which was assigned case No. 99AP-1268, and then referenced to a magistrate. On April 28, 2000, the magistrate issued her decision, stating:
 * * * Here, where claimant is severely restricted in the use of her dominant upper extremity, and where the existence of jobs consistent with such restrictions is crucial, it was an abuse of discretion for the commission to state summarily that "many" jobs exist for one-handed persons. Some explanation or identification of the basis of this conclusion was required given the severe restrictions imposed medically.
 Based on the foregoing, it is the magistrate's decision to recommend that this court grant a limited writ of mandamus, returning this matter to the commission to vacate its order denying PTD and to issue a new order, granting or denying PTD, in compliance with Noll, supra.
9. On September 14, 2000, this court issued its memorandum decision which adopted the magistrate's decision, granted a limited writ of mandamus returning the matter to the commission to vacate its order denying PTD and to issue a new order, granting or denying PTD, which complies with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
10. This court's judgment entry in case No. 99AP-1268 was filed on September 15, 2000.
11. On November 17, 2000, pursuant to this court's judgment entry in case No. 99AP-1268, the commission issued an order vacating the SHO's order of January 20, 1999, and referring the matter to the commission's hearing administrator for the scheduling of another hearing on the PTD application.
12. On December 13, 2000, a hearing was held before another SHO. No new evidence was presented at the December 13, 2000 hearing.
13. Following the hearing, the SHO issued an order granting the PTD application. The SHO's order of December 13, 2000, states:
 Permanent and total disability compensation is hereby awarded from 07/03/1998[.]
 This order is based particularly upon the reports of Dr. Lowell C. Meckler, M.D., and Dr. Paul Mumma, D.O.
 Claimant was examined at the direction of the Industrial Commission on 10/15/1998 by Dr. Lowell C. Meckler, an Internal Medicine Specialist. Dr. Meckler concluded that claimant is incapable of all forms of sustained remunerative employment whatsoever as a consequence of the allowed conditions in this industrial claim. This finding is adopted by the Staff Hearing Officer. Such a finding mandates an award of permanent total disability compensation without consideration of the "Stephenson" factors.
 The start date is established as 07/03/1998, which is the date of Dr. Mumma's report. Dr. Mumma, in his 07/03/1998 report also finds the claimant to be permanently and totally disabled. As the earliest report, Permanent Total Disability is awarded from that date.
14. On October 19, 2001, relator, P.C.C. Airfoils, Inc., filed this mandamus action.
Conclusions of Law:
Three issues are presented: (1) whether the reports from Dr. Meckler constitutes some evidence upon which the commission can rely to support its PTD award, (2) whether the report from Dr. Mumma constitutes some evidence upon which the commission can rely to support its PTD award, and (3) whether it was an abuse of discretion for the commission to not explain in its December 13, 2000 order why it rejected its previous reliance upon Dr. Shtull's report.
The magistrate finds: (1) the reports of Dr. Meckler constitutes some evidence upon which the commission can rely to support its PTD award, (2) the report of Dr. Mumma constitutes some evidence upon which the commission can rely to support its PTD award, and (3) it was not an abuse of discretion for the commission to not explain in its December 13, 2000 order why it rejected its previous reliance upon Dr. Shtull's report.
According to relator, because the allowed conditions of the claim are confined to the right upper extremity, Dr. Meckler must have considered nonallowed conditions when he found that claimant: (1) can only stand and walk for "0-3 HRS," (2) is totally restricted from lifting and carrying without regard to the extremity, (3) is totally restricted from handling without regard to the extremity, and (4) cannot crouch, stoop, bend or kneel. According to relator, Dr. Meckler fails to offer any explanation causally relating the restrictions to the allowed conditions in the claim.
In the magistrate's view, relator's challenge to Dr. Meckler's reports is premised upon an overly simplistic view of claimant's industrial injury and the clinical findings of Dr. Meckler. Relator seems to suggest that the industrial injury simply involves a substantial loss of use of the right upper extremity. Relator seems to ignore the pain factor that Dr. Meckler describes in detail in his report.
Dr. Meckler notes that claimant's chief complaint is that of "continuous pain" in the right upper extremity radiating to the right side of her neck. There was a complaint that the pain has been present for ten years and that claimant has stomach pain from taking medications.
In his history, Dr. Meckler notes that claimant has had numerous injections, physical therapy, and stellate ganglion blocks, all of which have failed to relieve the pain.
During his examination, Dr. Meckler elicited diffuse pain on palpation and range of motion testing of the right shoulder. Examination of the right upper arm and right elbow demonstrated diffuse pain with palpation. There was moderately severe pain on palpation on the distal forearm and wrist. Examination of the right hand demonstrated diffuse pain on palpation and involved all five digits.
In his discussion, Dr. Meckler noted that claimant has the "four cardinal signs and symptoms of RSD, namely, pain, swelling, stiffness, and discoloration." He further notes that Bier blocks were unsuccessful in alleviating the pain.
Dr. Meckler opines that claimant cannot perform any sustained remunerative work activity.
In the magistrate's view, it is not at all difficult to see how Dr. Meckler could conclude that claimant cannot perform sustained remunerative employment given her dysfunctional right upper extremity, her almost ten year history of unsuccessfully treating the pain, and the diffuse pain elicited on palpation or range of motion of her right upper extremity.
It can be readily inferred from Dr. Meckler's report that the pain is quite debilitating to the point that it impacts the ability to perform sustained remunerative employment. See State ex rel. Paraskevopoulos v. Indus. Comm. (1998), 83 Ohio St.3d 189, 191; State ex rel. Unger v. Indus. Comm. (1994), 70 Ohio St.3d 672, 676 (suggesting that the commission can abuse its discretion by failing to factor pain into its medical determination.)
Dr. Meckler's failure to indicate by checkmark on the Occupational Activity Assessment form that lifting and handling restrictions are limited to the right upper extremity, does not require this court to eliminate the report from evidentiary consideration. It seems obvious from a reading of Dr. Meckler's narrative report that there are severe limitations in the use of the right upper extremity. In fact, Dr. Meckler states that the examination was "limited mainly to the right hand and right upper extremity." Given that statement, it is clear that the lifting and handling restrictions on the Occupational Activity Assessment report relate to the right upper extremity.
In short, Dr. Meckler's opinion that claimant is unable to perform sustained remunerative employment appears premised upon the pain producing industrial injury to the right of her extremity.
Turning to Dr. Mumma's report, relator contends that it "fails to note the allowed conditions in the claim." However, Dr. Mumma acknowledges that his opinion relates to the industrial claim. Dr. Mumma lists the industrial claim number and he indicates that claimant has had problems with the Bureau of Workers' Compensation. He also clearly indicates that his PTD opinion is premised solely upon the reflex sympathetic dystrophy of the right upper extremity, a reference to one of the allowed conditions in the claim.
Relator also faults Dr. Mumma's report for the absence of an impairment rating. There is no requirement that a doctor present an impairment rating. Relator further faults Dr. Mumma's report for failure to analyze the vocational factors. It is not the examining doctor's responsibility to analyze the vocational factors.
Accordingly, Dr. Mumma's report is clearly some evidence supporting the commission's PTD award.
The third issue is whether the commission was required to explain in its December 13, 2000 order why it rejected its previous reliance upon Dr. Shtull's report.
In its previous order, the commission relied upon Dr. Shtull's report for its threshold medical determination that claimant was medically able to perform sedentary employment. However, this court subsequently determined that the commission's nonmedical analysis was flawed and, in its judgment entry, ordered the commission to vacate its order denying PTD and to issue a new order, granting or denying PTD, which complies with Noll, supra.
This court's writ of mandamus directed the commission to vacate the entire order not just that portion involving the flawed nonmedical analysis. Thus, the commission was free to redetermine all the issues relating to the PTD application, and in accordance with this court's judgment entry, either grant or deny PTD.
The commission did in fact vacate its previous order in its entirety as this court instructed. Clearly, the new SHO hearing the application on December 13, 2000, was free to reweigh the medical evidence and to redetermine the threshold medical issue. This means that he was free to reject the Shtull report and to rely upon the reports of Drs. Mumma and Meckler as long as those reports constitute some evidence. Indeed, those reports are some evidence upon which a PTD award can be based.
In keeping with well-settled authority, the SHO who heard the application on December 13, 2000, was only required to cite to the evidence relied upon in rendering the threshold medical determination. State ex rel. DeMint v. Indus. Comm. (1990), 49 Ohio St.3d 19; State ex rel. Lovell v. Indus. Comm. (1996), 74 Ohio St.3d 250, 252. The new SHO was not required to explain why he rejected Dr. Shtull's report. Id.
Relator further contends that because the second SHO had essentially the same evidence before him as the first SHO, the second SHO could not reach the opposite result without at least explaining why he had rejected Dr. Shtull's report. This argument simply ignores that evidence can be subject to different viewpoints, and that weighing the evidence is the task of the commission. See State ex rel. Draganic v. Indus. Comm. (1996), 75 Ohio St.3d 461; State ex rel. Tapp v. Parsec, Inc. (1998),82 Ohio St.3d 417 (commission not bound by an approved closed-period interlocutory order determining that a claimant is PTD).
Accordingly, for the all above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 KENNETH W. MACKE MAGISTRATE